Affirmed and Memorandum Opinion filed July 15, 2008








Affirmed and Memorandum Opinion filed July 15, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00836-CR

____________

 

JOE SALINAS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 230th
District Court

Harris County, Texas

Trial Court Cause No. 1052584

 



 

M E M O R A N D U M   O P I N I O N

Appellant Joe Salinas appeals from his conviction for
murder.  In three issues, appellant contends the evidence is legally and
factually insufficient to support his conviction and that the trial court erred
in excluding evidence that appellant acted in self-defense.  We affirm.








I.  Background

On October 8, 2005, appellant shot and killed Robert
Coleman.  At trial, appellant claimed he did so in defense of himself and his
friend, Lionel Munguia.  

Arthur Williams[1]
testified that on the night of October 8, 2005, he was sitting in his truck,
which was parked in the driveway of his house.  Sometime between 11:00 p.m. and
midnight, Arthur looked down the street and saw appellant walk up to a vacant
house while appellant=s friend, Lionel Munguia, waited in the
street. Because it appeared to Arthur that the boys may have been intending to
vandalize the house, Arthur notified his neighbor, Robert Coleman, who was also
the complainant.  Coleman was out in his front yard that night, along with
several other family members.  When Arthur informed Coleman of his suspicions,
Coleman went into his house for a moment and then came back outside and began
walking towards appellant and Munguia.  Arthur followed in his truck. 








Arthur testified that he saw appellant leave the vacant
house and knock on the door of an adjacent house.  No one answered, and
appellant returned to the street where Munguia was waiting.  Arthur testified
that as Coleman approached the boys in the street, he could not see anything in
Coleman=s hands.  Coleman
and appellant exchanged words, but Arthur could not make out exactly what was
said.  Arthur next heard Coleman say he was not afraid of appellant=s brother, and
then Coleman asked appellant, AWhat was you reaching for?@  Arthur testified
that at this point, appellant had turned his back to Coleman.  Coleman reached
over appellant=s shoulder just as appellant started turning back
around.  Arthur testified he could not see what Coleman was reaching for, but
the next thing he saw was Coleman=s head going back
and then Coleman hitting the ground.  Appellant began backing up and shooting. 
Arthur testified he heard from four to six shots.  At this point, Arthur put
his truck in reverse and backed down the street to his house, where he called
911. 

Officer Matthew Williams responded to the 911 call.  Upon
arriving at the scene, he found Coleman lying in the street surrounded by a
group of Coleman=s relatives and neighbors.  Coleman died
before medical help could arrive.  Officer Robert Gutierrez, the crime scene
investigator, testified to finding an ammunition magazine for a semi-automatic
pistol, fully loaded with .32 caliber bullets, lying on the ground
approximately six feet from Coleman=s body.  Despite a
search of the area, no weapon capable of firing the magazine was found. 
Officer Gutierrez also found an unfired .38 caliber bullet behind some bushes
about 150 feet away from Coleman=s body.  Officer
Gutierrez testified that the same weapon could not fire both the .32 caliber
bullets and the .38 caliber bullet.  According to Officer Gutierrez, typically
a revolver, a different type of gun than a semi-automatic pistol, would fire
the .38 caliber bullet.  Although Officer Gutierrez recovered four fired .38
caliber casings and several more unfired .38 caliber bullets from appellant=s bedroom, no
revolver capable of firing such bullets was found.  Nor was a semi-automatic
pistol capable of firing the ammunition magazine ever found.

Dr. Albert Chu, the medical examiner who performed the
autopsy, testified that Coleman died as a result of a gunshot wound to the
head.  Dr. Chu testified that the gun was fired at Coleman from a distance of
at least two feet.  Dr. Eric Sappenfield, the trace evidence laboratory manager
for the Harris County Medical Examiner=s Office,
testified that no evidence of gunshot residue was detected on Coleman=s hands.








In support of his claim of self-defense and defense of a
third person, appellant put on testimony from two eye-witnesses, Munguia and
Pedro Anzares.  Contrary to Arthur=s testimony, both
Anzares and Munguia testified to seeing two males, Coleman and another
unidentified male, armed with guns that night.  Anzares testified that while
sitting outside in his driveway, he saw Munguia and appellant walk by.  About
ten minutes later, Anzares heard two or three gunshots, and then he saw
appellant running back up the street toward appellant=s house. 
Appellant stopped in front of Anzares=s house and bent
down behind some bushes.  Anzares testified that he saw Munguia run by, pursued
by an unidentified male who was shooting at Munguia and appellant.  Anzares
said appellant stood up from behind the bush and fired one shot back towards
Coleman.  Anzares testified that a car pulled up and the male that was chasing
appellant and Munguia stopped, bent down to look for something on the ground,
then jumped in the car and drove away.  After the car left, Anzares could see
Coleman=s body lying in
the street. 

Munguia testified that Coleman and another large man
approached Munguia and appellant as they stood in the street.  The men were
both carrying guns.  According to Munguia, Coleman was carrying a
semi-automatic handgun.  Munguia testified that he and appellant were scared
and turned around to go back to appellant=s house.  Coleman
told the boys to Acome here@ in a loud voice,
and Munguia heard Coleman cock his gun so that it was ready to fire.  According
to Munguia, Coleman acted as the aggressor, grabbing appellant and hitting him
in the face.  Munguia testified that he saw appellant bleeding from the blow. 
Appellant managed to free himself and took off running down the street. 
Munguia testified that Coleman opened fire at appellant.  Appellant ducked
behind some bushes and then stood up and fired two shots back, hitting Coleman
with the second shot.  

After the shooting, Munguia and appellant continued running
back to appellant=s house.  Appellant was arrested at his
house later that night.  Following a jury trial, appellant was convicted of
murder and sentenced to ten years= confinement. 
This appeal followed.

II.  Sufficiency of the Evidence








In a legal sufficiency review, we view all the evidence in
the light most favorable to the verdict and determine whether a trier of fact
could have found each element of the offense beyond a reasonable doubt.  Young
v. State, 14 S.W.3d 748, 753 (Tex. Crim. App. 2000).  When reviewing a
legal sufficiency challenge on the issue of self‑defense, the reviewing
court views the evidence in the light most favorable to the verdict to see if
any rational trier of fact could have found (1) the essential elements of
murder beyond a reasonable doubt and (2) against appellant on the self‑defense
issue beyond a reasonable doubt.  See Saxton v. State, 804 S.W.2d 910,
914 (Tex. Crim. App. 1991).  The jury is the exclusive judge of the credibility
of witnesses and of the weight to be given to their testimony.  Jones v.
State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).  Reconciliation of
conflicts in the evidence is within the exclusive province of the jury.  Id.
 We must resolve any inconsistencies in the testimony in favor of the
verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review, we review all the evidence
in a neutral light, favoring neither party.  Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006).  We then ask (1) whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the jury=s verdict seems clearly wrong and manifestly unjust or
(2) whether, considering conflicting evidence, the jury=s verdict is
against the great weight and preponderance of the evidence.  Id. at 414B15.








In his first and second issues, appellant argues that the
evidence is legally and factually insufficient to support his conviction for
murder because the State failed to rebut his claims of self-defense and defense
of a third person beyond a reasonable doubt.  A person is justified in using
force against another when and to the degree he reasonably believes the force
is immediately necessary to protect himself against the other=s use or attempted
use of unlawful force.  Tex. Penal Code
Ann. _ 9.31(a) (Vernon Supp. 2007).  A person is justified in
using deadly force against another (1) if he would be justified in using force
and (2) when and to the degree he reasonably believes the deadly force is
immediately necessary to protect himself against the other=s use or attempted
use of unlawful deadly force.  Id. _ 9.32.  A person is justified in
using deadly force to protect a third person if (1) the actor would be
justified in using deadly force to protect himself against the unlawful deadly
force he reasonably believes to be threatening the third person he seeks to
protect and (2) he reasonably believes that his intervention is immediately
necessary to protect the third person.  Id. _ 9.33 (Vernon
2003).

The initial burden of proving self-defense rests with the
defendant.  Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App.
2003).  Once evidence is produced, the burden shifts to the State to disprove
the defense beyond a reasonable doubt.  Id.  The burden of persuasion is
not one that requires the production of evidence.  Id.  Rather, it
requires only that the State prove its case beyond a reasonable doubt.  Id. 
When a jury finds the defendant guilty, there is an implicit finding against
the defensive theory.  Id.

It was undisputed at trial that appellant shot and killed
Coleman.  However, appellant claims the following evidence supports his
contention that he was acting in response to Coleman=s and another
unknown male=s use of unlawful, deadly force.  

Arthur testified that before walking down the street to
confront appellant, Coleman told Arthur, Alet me run into
the house and we=ll go around there.@  Appellant claims
Coleman could have retrieved a gun when he went inside.  In addition, according
to appellant, the ammunition magazine found in close proximity to Coleman=s body constitutes
proof that at least one of the males was armed and confronted appellant with
deadly force.  Appellant claims that the presence of the crowd around Coleman=s body raises a
possibility that the second weapon was removed before the police arrived. 
Appellant also points out that the autopsy report showed that Coleman was
legally intoxicated, and Dr. Chu testified that a person who is legally
intoxicated could have impaired judgment. 








Appellant further argues that the following evidence casts
doubt on the credibility of Arthur=s testimony. 
Arthur testified he thought appellant and Munguia intended to break into the
vacant house, but Arthur later admitted the house likely contained no
property.  Arthur admitted that he has difficulty with his vision, the scene
was dark, and he could not see Coleman=s hands at the
moment Coleman confronted appellant.  Appellant argues that Dr. Chu=s testimony that
Coleman was shot from a distance of greater than two feet contradicts Arthur=s testimony that
appellant shot Coleman at point blank range.  Appellant further challenges
Arthur=s testimony that
he saw appellant firing repeatedly at Coleman because Arthur testified that he
was backing his truck away from the shooting and was therefore looking in the
opposite direction at that moment.  Finally, although Arthur testified to
hearing at least four shots fired, appellant asserts that this evidence did not
establish that appellant was the source of all four shots. 

Appellant also points to the testimony of Anzares and Munguia
as being contrary to the jury=s implied finding against appellant on the
issue of self-defense.  Both Anzares and Munguia testified that appellant fired
his gun in response to being shot at by either Coleman or the unidentified
male.  However, the evidence shows that a second weapon was never found, the
ammunition magazine was fully loaded and unfired, and no fired bullet casings
matching the caliber of bullets in the magazine were recovered from the crime
scene.  The gunshot residue tests on samples taken from Coleman=s hands came back
negative, indicating Coleman had not fired a gun that night.  Officer Williams,
who arrived within minutes of the shooting, testified that he did not see
anyone tampering with the crime scene or picking things up.  Arthur testified
that he did not see Coleman carrying a gun that night, and it is undisputed
that appellant was armed with a gun and that the .38 caliber bullet found at
the crime scene matched bullets found in appellant=s bedroom.  








Munguia also testified that Coleman was the aggressor,
punching appellant in the face with his gun.  However, Officer Rodriguez
testified that he did not notice any obvious wounds or injuries on appellant
and that appellant never requested medical attention.  None of the other
witnesses who saw appellant after the murder testified to seeing any injuries
on appellant=s face.  Officer Rodriguez recovered a bloody shirt
and bloody towel from appellant=s bathroom, but no other evidence was
presented as to the source of the blood.  Moreover, Munguia testified that when
appellant first approached the vacant house, appellant tripped and fell,
scraping his hands and causing them to bleed.  

Viewing the evidence in the light most favorable to the
verdict, we find a jury could have concluded beyond a reasonable doubt that
Coleman did not use unlawful deadly force against appellant, and therefore
appellant was not justified in using deadly force to protect himself or
Munguia.  See Saxton, 804 S.W.2d at 914.  Viewing all the evidence in a
neutral light, we further conclude that appellant=s evidence of
self-defense and defense of a third person was controverted by Arthur=s eye-witness
testimony and the lack of evidence indicating Coleman fired a gun.  We presume
that any conflicting inferences from the evidence were resolved by the jury in
favor of the verdict, and we must defer to that resolution.  See Matson v.
State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  We also defer to the
jury=s determination of
the weight and credibility to be afforded the testimony brought in this case.  See
Cain v. State, 958 S.W.2d 404, 408B09 (Tex. Crim.
App. 1997) (holding that jury determines weight to place on contradictory
testimonial evidence).  Although Munguia=s and Anzares=s accounts
contradicted Arthur=s testimony, the jury implicitly chose to
accept Arthur=s testimony and to disbelieve Munguia and Anzares, and
we may not re‑weigh the evidence and substitute our judgment for that of
the jury.  See King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000).  Accordingly, we do not find the evidence weighing against the verdict
so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust.  Watson, 204 S.W.3d at 414B15.  We overrule
appellant=s first and second issues.








III.  Exclusion of Evidence

In his third issue, appellant challenges the trial court=s decision to
exclude opinion testimony by Coleman=s sister, Ruthie
Coleman.  Texas Rule of Evidence 701 provides that if a witness is not
testifying as an expert, testimony in the form of opinions or inferences must
be limited to opinions or inferences that are rationally based on the
perception of the witness and helpful to a clear understanding of the testimony
or the determination of a fact in issue.  Tex.
R. Evid. 701.  Whether an opinion meets the fundamental requirements of
Rule 701 is within the sound discretion of the trial court, and its decision
regarding admissibility should be overturned only for abuse of discretion.  Fairow
v. State, 943 S.W.2d 895, 901 (Tex. Crim. App. 1997).  If there is evidence
in the record supporting the trial court=s decision to
admit or exclude an opinion under Rule 701, there is no abuse, and the
appellate court must defer to that decision.  Id.

In a hearing outside the presence of the jury, appellant
called Ruthie Coleman to testify to a conversation between she and William
Exley, the prosecutor in the case.  However, Ruthie denied having the
conversation with Exley.  She testified that she was not present on the scene
the night of the shooting and that she had not seen appellant that night. 
Appellant then called Exley to testify that Ruthie had called him and said that
based on a phone call she had received from her nephew as the nephew stood over
Coleman=s body, Ruthie
believed appellant shot Coleman out of fear and not out of malice.  Exley also
testified that Ruthie said that a male who lived in the Coleman household could
provide further information about appellant possibly acting in self-defense,
but that Ruthie refused to provide a name.  Exley testified he could not
affirmatively say that the woman who identified herself on the phone as Ruthie
Coleman was the same woman appellant called as a witness in court and who
denied making the phone call to Exley.  The trial court excluded Ruthie=s and Exley=s testimony on
grounds that Ruthie was not an eye-witness and did not have personal knowledge
of what occurred.








The Rule 701 requirement that lay opinion testimony be
based on the witness=s perceptions incorporates the personal
knowledge requirement of Rule of Evidence 602.  See Tex. R. Evid. 602, 701; Fairow,
943 S.W.2d at 898.  Perceptions refer to a witness=s interpretation
of information acquired through her own senses or experiences at the time of
the eventCwhat the witness saw, heard, smelled, touched, felt,
or tasted.  See Osbourn v. State, 92 S.W.3d 531, 535 (Tex. Crim. App.
2002).  If the proponent of the testimony cannot establish personal knowledge,
the trial court should exclude the testimony.  Fairow, 943 S.W.2d at
898.  Appellant introduced Exley=s testimony solely
to get Ruthie=s opinion into evidence.  However, Ruthie did not have
personal knowledge of the events in question.  She was not present the night of
the shooting, and she did not have any interaction with appellant that night. 
Ruthie=s opinion
testimony was therefore not based on personal knowledge of the event in
question.  Because the record supports the trial court=s decision to
exclude Ruthie=s and Exley=s testimony, we
conclude the exclusion of this evidence was not an abuse of discretion. 

Appellant claims that excluding the evidence violated his
fundamental right to present a complete defense as articulated in Holmes v.
South Carolina, 547 U.S. 319, 324 (2006).  In Holmes, the Court
acknowledged that the Constitution guarantees criminal defendants a meaningful
opportunity to present a complete defense.  Id.  Holmes prohibits
excluding defense evidence under evidence rules that infringe upon a weighty
interest of the accused and are arbitrary or disproportionate to the purposes
they are designed to serve.  Id.  The trial court excluded appellant=s evidence because
Ruthie=s lack of personal
knowledge made her testimony unreliable.  A rule ensuring that only reliable
evidence is presented at trial serves a legitimate interest and does not
unconstitutionally abridge the right to present a defense.  See United
States v. Scheffer, 523 U.S. 303, 309, 317 (1998).  The personal knowledge
requirement therefore does not fall into the category of rules proscribed in Holmes. 
See Holmes, 547 U.S. at 324.  We overrule appellant=s third issue.








We affirm the trial court=s judgment.

 

/s/      Leslie B. Yates

Justice

 

 

Judgment rendered
and Memorandum Opinion filed July 15, 2008.

Panel consists of
Justices Yates, Guzman, and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  Arthur Williams and Houston Police Officer Matthew
Williams both testified for the State.  To avoid confusion, we will refer to
Arthur Williams as AArthur@ and Officer
Matthew Williams as AOfficer Williams.@